UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

CIVIL ACTION NO. 05-404-JBC

JAMES WEST,                                                                                                    PLAINTIFF,

V.                          MEMORANDUM OPINION AND ORDER

JO ANNE BARNHART, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                                    DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits and Supplemental Security Income payments (DE 7, 8). The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the Commissioner's motion.

**A.   OVERVIEW OF THE PROCESS**

Judicial review of the Administrative Law Judge's ("ALJ") decision is limited to determining whether he employed the proper legal standards. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*,

203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step One, the ALJ considers whether the claimant is performing substantial gainful activity; at Step Two, the ALJ determines if one or more of the claimant's impairments are "severe"; at Step Three, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step Four, the ALJ determines whether or not the claimant can perform past relevant work; and, finally, at Step Five – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.      THE ALJ'S DETERMINATION**

The plaintiff complains of weakness and fatigue due to hypothyroidism, borderline intellectual functioning, and adjustment disorder with anxiety and depressed mood. At Step One, the ALJ determined that the plaintiff has not engaged in substantial gainful activity. At Steps Two and Three, the ALJ determined that the plaintiff's impairments are severe but do not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. At Step Four, the ALJ found that the plaintiff could not engage in his past relevant work. The ALJ determined that the plaintiff, despite his severe impairments, retains the

residual functional capacity ("RFC") to perform a significant range of light work. At Step Five, the ALJ concluded that the plaintiff is not disabled, because there exists a significant number of jobs in the national economy that the plaintiff could perform.

**C.　ANALYSIS**

The plaintiff argues that the ALJ failed to properly apply the standard for meeting listed impairment 12.05C, mental retardation. The plaintiff also claims that the ALJ erred in not affording controlling weight to the plaintiff's treating physician's opinion that the plaintiff's condition precluded him from maintaining employment.

Review of the ALJ's decision to deny disability benefits is limited to determining whether substantial evidence exists to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989), *citing Richardson v. Perales*, 402 U.S. 389 (1971). "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

**1.　Listing 12.05C**

If a claimant's impairments meet or medically equal one of the listed impairments, the disability analysis terminates at Step 3, and the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). The claimant bears the burden of

3

proving he meets or equals a listed impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The plaintiff contends that he meets the requirements of Listing 12.05C for mental retardation.

> Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period (before age 22). The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> * * * *
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05. A claimant will be found mentally retarded only if his condition satisfies the criteria in the introductory paragraph *and* in one of the subparagraphs. *Foster*, 279 F.3d at 354 (*quoting* 20 C.F.R., Pt. 404, Subpt. P, App. 1 §12.00(A) *as amended by* 65 Fed. Reg. 50746, 50776 (Aug. 21, 2000)).

The ALJ concluded that "[t]he evidence of the claimant's mental impairments does not reflect ... qualifying IQ scores before age 22," and therefore the evidence did not support a finding that he met the criteria of Listing 12.05C. AR 288. The court finds that substantial evidence supports the ALJ's decision.

Gary Dunn, Ph.D., evaluated the claimant on June 1, 2004, when the claimant was thirty-seven. The plaintiff had a verbal IQ of 67, performance IQ of 72, and full-scale IQ of 66. AR 418. Dr. Dunn also noted that the plaintiff was

able to engage in a wide variety of daily activities and was capable of understanding and retaining simple instructions and maintaining concentration and attention as needed to complete basic tasks in a work environment. AR 419. Dr. Dunn found that any limitations on the plaintiff's ability to work were moderate, and his difficulty working full-time was attributable to his physical rather than mental impairments. AR 419-21. Dr. Dunn diagnosed the plaintiff with borderline intellectual functioning and an adjustment disorder with mixed anxiety and depressed mood. AR 418-19.

The plaintiff's IQ had been previously assessed on August 7, 2001, by I.T. Baldwin, M.A., at which time the plaintiff was thirty-four. AR 182. The results of that testing were verbal IQ - 83, performance IQ - 85, and full scale IQ - 83. AR 185.

The plaintiff was never diagnosed with mental retardation, and there is no evidence that he has deficient adaptive functioning. There is no evidence that the plaintiff's general intellectual functioning was significantly below average before he turned twenty-two, and the fact that the earlier evaluation reflects higher IQ scores is contrary to such an inference. The plaintiff did not prove that he meets the requirements in the introductory paragraph to Listing 12.05, and the ALJ's determination that he is not disabled on that basis is supported by substantial evidence.

### 2. Treating Physician Rule

The plaintiff next contends that the ALJ improperly failed to give controlling

weight to the opinion of Thomas Coburn, M.D., in contravention of the treating physician rule. A treating physician's medical opinion is to be given substantial deference. *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992). If the opinion is uncontradicted, it is owed complete deference. *Id.* The ultimate determination of disability, however, is not a medical opinion, and that issue is reserved to the ALJ. *Id.* The plaintiff argues that Dr. Coburn's opinion as to his fatigue and tiredness is a medical opinion that is owed, but was not given, complete deference.

Dr. Coburn began treating the plaintiff for hypothyroidism on August 25, 1998, and laboratory tests consistently revealed elevated thyroid levels. *See* AR 178, 176, 175, 173, 408. Dr. Coburn explained that the plaintiff had missed work as a result of the weakness and fatigue caused by his thyroid disorder, and he believed the plaintiff would have difficulty working while trying to control his thyroid. AR 250, 165, 159. The ALJ did not take issue with Dr. Coburn's assessment that the plaintiff missed work because of his condition. The ALJ did find, however, that the examination reports do not support the conclusion that the plaintiff is unable to work because of fatigue and sluggishness. The ALJ considered the plaintiff's ability to operate a commercial truck, attend his personal needs, cook, grocery shop, and perform housecleaning tasks in determining that he retains the RFC to lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand or walk 6 hours per 8-hour day; and sit 6 hours per 8-hour day. The ALJ explained that he

6

> granted significant weight to the claimant's complaints of fatigue, weakness, and lethargy. The claimant's treating physician corroborated such difficulties, and laboratory testing of record reveals abnormal thyroid activity. Thus, the undersigned found a significant reduction in the claimant's exertional capacities warranted. The claimant's ability to work 2 8-hour workdays per week and fairly robust regimen of daily activities, however, support a finding that the claimant continues to possess a residual functional capacity capable of performing significant work.

AR 289.

The court finds that the ALJ did not improperly reject Dr. Coburn's medical opinion that the plaintiff's hypothyroidism made him fatigued and tired at times. Dr. Coburn stated that the plaintiff's hypothyroidism was difficult to regulate, AR 159, but at other times reported that the plaintiff's condition was under control. AR 164, 171, 406, 485. The ALJ credited the claimant's complaints of fatigue, weakness, and lethargy, as corroborated by Dr. Coburn's treatment records. *See* AR 161, 168, 253, 485. However, the plaintiff frequently reported to Dr. Coburn that he was not experiencing any problems or symptoms. AR 160, 171, 406, 251. The court thus finds that the ALJ afforded appropriate weight to Dr. Coburn's medical opinions, and he properly made an independent determination based on the record that the plaintiff's impairments do not render him disabled.

Martha Goss, a vocational expert ("VE"), appeared at the claimant's hearing on June 15, 2005. The ALJ posed the following hypothetical question to the VE:

> [A]ssume a gentleman 38 years of age with a 7th grade education who is marginally literate. He has a work history as a laborer and maintenance worker for a small town. Let me ask you to assume that he could perform light work

> exertionally. He could lift 20 pounds occasionally, 10 pounds frequently. He is limited to simple routine tasks that are low stress in nature. Based upon these assumptions, would there be any jobs that such a person could perform or not in your opinion?

AR 527. The VE responded affirmatively. *Id.* A VE's response to a hypothetical question that accurately portrays the claimant's impairments may constitute substantial evidence that there exists a significant number of jobs that the claimant can perform. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). The court finds that the hypothetical question posed to the VE accurately reflects the plaintiff's work-related limitations, and the VE's response constitutes substantial evidence in support of the ALJ's determination that the plaintiff is not disabled. Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (DE 7) is **DENIED** and the Commissioner's motion for summary judgment (DE 8) is **GRANTED**.

Signed on April 10, 2006

*Jennifer B. Coffman*
JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY